IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Rogers, James Hill, and Wanda Hollins, | ) ) ) |
| *Plaintiffs*, | ) ) ) *(Judge Chang)* |
| -vs- | ) ) 15-cv-11632 |
| Sheriff of Cook County and Cook County, Illinois | ) ) ) |
| *Defendants* | ) ) |

## SECOND AMENDED COMPLAINT

Plaintiff, by counsel, alleges as follows

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 12133, 29 U.S.C. § 794a(a)(2), 28 U.S.C. § 1343.

## PARTIES

2. Plaintiffs Keith Rogers, James Hill, and Wanda Hollins are residents of the Northern District of Illinois. At all times relevant, each plaintiff was participating in a program that included "opioid agonist therapy," also known as "medication-assisted treatment," that involved treatment with methadone or buprenorphine.

3. Each plaintiff is a "qualified individual with a disability" under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-34 either because the plaintiff has a current or past history of an opioid use disorder that substantially limits a major life activity, or because the plaintiff is regarded as having a disabling impairment because of participation in an "opioid agonist therapy" program.

4. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity.

5. At all times relevant, the Sheriff has received federal funds for use at the Jail.

6. Defendant Cook County is responsible, in collaboration with defendant Sheriff, for providing medical services to detainees at the Cook County Jail.

7. At all times relevant, Cook County has received federal funds for use at the Jail.

8. Defendant Cook County is also joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F. 3d 947 (7th Cir. 2003).

## FORCED TAPERING OF DETAINEES RECEIVING "OPIOID AGONIST THERAPY"

9. As explained below with greater specificity, plaintiffs bring this action individually and for a proposed class to challenge the refusal of defendants to permit detainees at the Jail to continue participation in "opioid agonist therapy."

10. "Opioid agonist therapy" is a safe and widely accepted strategy for treating opioid use disorders. Individuals who participate in "opioid agonist therapy" receive FDA-approved medication, often in combination with behavioral health and other social services, to treat opioid dependence. There is broad agreement in the medical and scientific communities that "opioid agonist therapy" successfully reduces illegal opioid use and enables participants to lead more productive, and healthier lives.

11. Despite the broad support for "opioid agonist therapy" among medical and substance use experts, individuals participating in "opioid agonist therapy" are often subjected to public stigma. This stigma arises, in part, from common misunderstandings about "opioid agonist therapy". For instance, it is sometimes believed that taking methadone or buprenorphine (or buprenorphine combination products, like Suboxone) simply "replaces one addiction with another." In fact, when methadone and buprenorphine are used as prescribed, they do not produce a "high," and instead block the

-3-

euphoric effects of illegal opiates. Another frequent misperception is that individuals should use "opioid agonist therapy" only as a tool to transition from opioid dependence to opioid abstinence. This misperception is contrary the evidence showing that "opioid agonist therapy" is the most effective treatment for opioid addiction.

12. At all times relevant, defendants have relied on these common misunderstandings in applying a "tapering policy" for detainees who enter the Jail while participating in "opioid agonist therapy." Defendants' tapering policy requires the Jail to reduce the dosage of "opioid agonist therapy" for each non-pregnant detainee who enters the Jail. Tapering means that the Jail will reduce the amount of medication provided for a detainee's "opioid agonist therapy" each day until the dosage is zero.

13. Defendants' tapering policy causes gratuitous physical pain and psychological discomfort and leaves the detainee less likely to restart treatment after leaving custody.

14. Defendants have sought to justify their tapering policy on the assertion that the mission of Cermak Health Services does not include "opioid agonist therapy." This assertion is not based on any data but is an irrational belief.

15. Contrary to defendants' irrational belief, the standard of care is that detainees who enter a jail while enrolled in "opioid agonist therapy" and who will be confined for relatively short periods of incarceration should be continued on that treatment to facilitate reentry and return to treatment in the community.

16. About 35% of the arrestees who enter the Jail while enrolled in "opioid agonist therapy" will leave the Jail in 21 days or less. Defendants do no have a reasonable basis to prevent this group of detainees from continuing "opioid agonist therapy."

## APPLICATION OF THE CHALLENGED POLICY TO THE NAMED PLAINTIFFS

17. Plaintiff Rogers was arrested on January 19, 2014 and entered the Cook County Jail on January 20, 2014. He was released February 16, 2014.

18. While being processed into the Jail, plaintiff Rogers informed intake personnel that he enrolled in an "opioid agonist therapy" program in which he received daily treatment of methadone, buprenorphine, or naltrexone.

19. Jail personnel did not provide plaintiff Rogers with opioid agonist therapy until January 26, 2014.

20. Plaintiff Rogers underwent extremely painful withdrawal until he began to receive his prescribed methadone; thereafter, Rogers experienced gratuitous pain because of the tapering policy described above.

21. Plaintiff Hill entered the Cook County Jail on December 23, 2013. He was released on December 31, 2013.

22. While being processed into the Jail, plaintiff Hill informed intake personnel that he was enrolled in an "opioid agonist therapy" program in which he received daily treatment of methadone, buprenorphine, or naltrexone.

23. Jail personnel did not provide plaintiff Hill with opioid agonist therapy until December 25, 2013.

24. Plaintiff Hill underwent extremely painful withdrawal until he began to receive his prescribed methadone; thereafter, Hill experienced gratuitous pain because of the tapering policy described above.

25. Plaintiff Hollins entered the Cook County Jail on September 12, 2013. She was released on October 5, 2013.

26. While being processed into the Jail, plaintiff Hollins informed intake personnel that she was enrolled in an "opioid agonist therapy" program in which she received daily treatment of methadone, buprenorphine, or naltrexone.

27. Jail personnel did not provide plaintiff Hollins with opioid agonist therapy until September 20, 2013.

28. Plaintiff Hollins underwent extremely painful withdrawal until she began to receive his prescribed methadone; thereafter, Hollins experienced gratuitous pain because of the tapering policy described above.

### INDIVIDUAL CLAIMS OF DELAY IN CONTINUING OPIOID AGONIST THERAPY

29. At all times relevant, there was a widespread practice or custom at the Jail of inordinate delay in continuing opioid agonist therapy to detainees. This claim is at issue for a class in *Parish v. Sheriff*, N.D.Ill., No. 07-cv-4369. Each plaintiff opts out of the *Parish* class by prosecuting this action.

30. Methadone has a "half-life" of about one day. This means that a person regularly taking methadone will begin withdrawal symptoms after one day without the drug; three days without methadone will be an extremely painful period of "cold turkey" withdrawal.

31. Defendants have known since the decisions of the Seventh Circuit in *Foelker v. Outagamie County*, 394 F.3d 510 (7th Cir. 2005) and *Davis v. Carter*, 452 F.3d 686 (7th Cir. 2006) that a widespread practice or custom of inordinate delay in continuing opioid agonist therapy to detainees at the Jail causes gratuitous pain and is unconstitutional

32. Data provided in this case shows that 94 of 185 incoming detainees waited more than two day before continuing opioid agonist therapy.

33. At all times relevant, defendants have turned a blind eye to the injuries caused by their widespread practice or custom of inordinate delay in continuing opioid agonist therapy to detainees at the Jail.

34. Each named plaintiff suffered severe and gratuitous pain as a result of defendants' widespread practice of delay in continuing opioid against therapy.

35. The application of defendants' widespread practice of delay in continuing opioid agonist therapy violates the Americans with Disabilities Act, the Rehabilitation Act, and the United State Constitution.

**CLASS CLAIM OF UNREASONABLE TAPERING POLICY**

36. Defendants apply their tapering policy, discussed above, to all non-pregnant detainees who enter the Jail while participating in opioid agonist therapy.

37. Each plaintiff experienced painful withdrawal symptom, including anxiety, chills, muscle pain (myalgia) and weakness, tremor, lethargy and drowsiness, restlessness and irritability, nausea and vomiting and diarrhea.

38. These symptoms are shared by numerous other detainees who entered the Jail while participating in opioid agonist therapy and who are subjected to defendants' tapering policy.

39. Defendants have known at all times relevant that their tapering policy causes gratuitous harm and interferes with safe and effective treatment.

40. The data available to plaintiffs show that 197 persons participated in opioid agonist therapy at the Jail in the 103-day period between September 20, 2013 and January 1, 2014. At least 144 of these 197 persons were released from the Jail and returned home during the tapering period.

41. The application of defendants' tapering policy violates the Americans with Disabilities Act, the Rehabilitation Act, and the United State Constitution.

42. Plaintiffs seek to prosecute this case for the following class:

All persons who entered the Cook County Jail on and after December 23, 2013 who were lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, and who were not pregnant.

43. Plaintiffs will show in a separate motion for class certification that the proposed class meets each of the requirements of Rule 23(a) and that class certification is appropriate under Rule 23(b)(3).

44. Plaintiffs hereby demands trial by jury.

Wherefore plaintiffs requests the Court order that the case may proceed as a class action and that the Court award appropriate compensatory damages against defendants.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 830399
Joel A. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200
*attorneys for plaintiff*
