IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Rogers, et al., | ) |
|       *Plaintiff,* | ) ) ) |
| -vs- | )  *(Judge Chang)* ) )  15-cv-11632 |
| Sheriff of Cook County and Cook County, Illinois, | ) ) ) ) |
|       *Defendants* | ) |

## PLAINTIFF'S RENEWED MOTION TO CERTIFY CASE AS A CLASS ACTION

Pursuant to Rule 23(c), plaintiffs, by counsel, move the Court to order that this case proceed as a class action for:

> All persons who (a) entered the Cook County Jail on and after December 23, 2013 or (b) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369, and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, and who were not pregnant.

### I. Procedural History

Plaintiff Keith Rogers filed this case on December 23, 2015, complaining about injuries he had incurred at the Cook County Jail after informing intake personnel that he was enrolled in a methadone program. (ECF No. 1.) Rogers complained about the delay in continuing his medication and about the Jail's written tapering policy that requires daily reduction in the dosage of methadone in "a linear taper to zero."[1] Rogers moved for class certification on November 21, 2016. (ECF No. 74.) The Court denied this motion "without prejudice as premature" on September 29, 2017. (ECF No. 90 at 5.)

---

[1] Plaintiffs discuss the tapering policy below at 2-4.

Pursuant to leave of Court (ECF No. 132), plaintiffs thereafter filed a second amended complaint, adding James Hill and Wanda Hollins as plaintiffs.[2] (ECF No. 133.) The second amended complaint states claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

## II. Background: Medication-Based Treatment for Opioid Use Disorder at the Cook County Jail

Opioid use disorder "is a chronic brain disease that comes about because of the effects of prolonged opioid use on brain structure and function."[3] This case involves methadone, buprenorphine, and extended-release naltrexone, which are "safe and highly effective medications that are already approved by the U.S. Food and Drug Administration (FDA) to treat OUD [Opioid Use Disorder]."[4]

Methadone and related medications work by "alleviating withdrawal symptoms, reducing opioid cravings, or decreasing the response to future drug use," and "make people with OUD less likely to return to drug use and risk a fatal overdose."[5] These medications "also help people restore their functionality, improve their quality of life, and reintegrate into their families and communities."[6] Withholding methadone and related medications "constitutes harm." Bruce & Schleifer, *Ethical and human rights*

---

[2] Plaintiff's first amended complaint (ECF No. 24) added factual allegations about the tapering policy, as suggested by the Court in its order of March 14, 2016. (ECF No. 18.)

[3] NATIONAL ACADEMIES OF SCIENCES, ENGINEERING, AND MEDICINE, MEDICATIONS FOR OPIOID USE DISORDER SAVE LIVES at 17, available at http://nap.edu/25310 (visited October 30, 2019) and attached as Exhibit 18.

[4] MEDICATIONS FOR OPIOID USE DISORDER SAVE LIVES, Exhibit 18 at 20.

[5] MEDICATIONS FOR OPIOID USE DISORDER SAVE LIVES, Exhibit 18 at 17.

[6] *Id.*

*imperatives to ensure medication-assisted treatment for opioid dependence in prisons and pre-trial detention*, 2008 INT'L J. DRUG POLICY (Vol. 19) 21 (attached as Exhibit 21 at 5).

Until at least July of 2017, the Cook County Jail refused to permit non-pregnant detainees to continue methadone maintenance.[7] The Jail did not have a penological purpose for this policy; as Dr. Avery Hart explained at a Rule 30(b)(6) deposition of Cook County in *Parish v. Sheriff*, 07-cv-4369, Plaintiffs' Exhibit 14, allowing detainees to continue methadone maintenance is not part of the Jail's "mission" (Hart Dep. 11:6, Exhibit 14 at 11 ) because:

Dr. Hart: [O]ur goal is not to run a methadone maintenance program. Our goal is to alleviate the symptoms of withdrawal from methadone. The exception, as I said, being pregnant women.

(Hart Dep. 10:5-22, Exhibit 14 at 10.)

The Jail implements this goal by reducing the dosage of methadone through "a linear taper to zero, with daily doses decreasing at an integer rate proportional to initial dose" for non-pregnant detainees. (Cermak Policy G-06.1, August 1, 2010, par. 5(h), Exhibit 15 at 3; Cermak Policy G-06.1, June 20, 2012, par. 6(h), Exhibit 16 at 4.)

The Jail's tapering policy results in painful withdrawal symptoms, including "anxiety, chills, muscle pain (myalgia) and weakness, tremor, lethargy and drowsiness, restlessness and irritability, nausea and vomiting and diarrhea." Amato, et al., *Methadone at Tapered Doses for the Management of Opioid Withdrawal*, 2013 COCHRANE DATABASE OF SYSTEMATIC REVIEWS 2 (2013), attached as Exhibit 17 at 2.

---

[7] Defendants assert that they changed their methadone maintenance program in July of 2017. The claimed change, however, is not reflected in any modification of the written policy and is not reflected in the data produced in this case. *See infra* at 10-11.

The Jail's tapering policy is also harmful: "All studies of tapering and discontinuation demonstrate very high rates of relapse, although some patients may be able to successfully taper off without a return to use."[8] Moreover, "[w]ithholding or failing to have available all classes of FDA-approved medication for the treatment of opioid use disorder in any care or criminal justice setting is denying appropriate medical treatment."[9]

This case involves a written policy applied at the Cook County Jail that requires tapering and discontinuation of medication for opioid use disorder for all detainees other than those who are pregnant.

### III. The Named Plaintiffs
#### A. Keith Rogers

Plaintiff Keith Rogers was enrolled in a methadone program when he entered the Cook County Jail on January 20, 2014. (Plaintiffs' Exhibit 1.) The Jail verified Rogers' participation in a methadone program on January 21, 2014 when a physician at the Jail ordered that Rogers receive "methadone 200mg then taper per protocol." (Plaintiffs' Exhibit 2.) Rogers began to receive methadone on January 26, 2014 with his dosage reduced (or "tapered") by 7 mg per day. (Plaintiffs' Exhibit 3.) Thus, Rogers received his regular dosage of 200 mg on January 26, 193 mg on January 27, 186 mg on January 28, and so on until he left the Jail on February 16, 2014, when his dosage had been tapered to 53 mg. (*Id.*)

---

[8] MEDICATIONS FOR OPIOID USE DISORDER SAVE LIVES at 34, Exhibit 18 at 34.
[9] *Id.* at 3.

Rogers experienced withdrawal symptoms (nausea, diarrhea, aching pain) before he received his first doses of methadone. (Rogers Dep. 41:8-15, Exhibit 4 at 29.) The diarrhea would last "[p]retty much all day." (Rogers Dep. 42:19, Exhibit 4 at 30.) The symptoms subsided when he began to receive methadone (Rogers Dep. 36:21-37:2, Plaintiff's Exhibit 4 at 36-37), but returned shortly after the tapering began. (Rogers Dep. 37:2-3, Plaintiff's Exhibit 4 at 37.) Rogers filed a grievance on February 14, 2014 stating: "at times pain gets quite severe. I break into sweats and get nausea. Sometimes resulting in vomiting or dry heaves." (Exhibit 5.) Rogers re-enrolled in his methadone program when he left the Jail and returned to his previous dose of 200 mg. (Rogers Dep. 39:22-14-40:9, Exhibit 4 at 39-40.)

### B. James Hill

Plaintiff James Hill was enrolled in a methadone program when he entered the Cook County Jail on December 23, 2013.[10] (Plaintiffs' Exhibit 6.) The Jail verified Hill's participation in a methadone program, and on December 25, 2013 a physician at the Jail ordered that Hill receive "methadone 80mg today then taper per Cermak protocol. Decrease by 4 mg daily until finished." (Plaintiffs' Exhibit 7.)

Hill received his regular dosage of 80 mg on December 25, 2013, 76 mg on December 26, 72 mg on December 27, and so on until he left the Jail on December 31, 2014, when his dosage had been tapered to 56 mg. (Plaintiffs' Exhibit 8.)

Hill experienced withdrawal symptoms during the tapering: he had trouble sleeping, felt nauseous, was throwing up, and experienced running diarrhea. (Hill Dep.

---

[10] The date of entry into the Jail is enclosed into the first 8 digits of Hill's jail identification number of 20131223105, meaning that Hill was detainee 105 on 12/23/2013.

27:23-28:3, Exhibit 9 at 15-16.) Hill re-enrolled in his methadone program when he left the Jail. (Hill Dep. 35:11-14, Exhibit 9 at 23.) Hill is currently taking Suboxone, one of the other medications used to treat opioid use disorder. (Hill Dep. 8:7-14, Exhibit 9 at 6.)

### C. Wanda Hollins

Plaintiff Wanda Hollins was enrolled in a methadone program when she entered the Cook County Jail on September 12, 2013. (Plaintiffs' Exhibit 10.) The Jail verified Hollins' participation in a methadone program on September 21, 2013 when a physician at the Jail ordered that Hollins receive "methadone 85 mg po on 9/21/13 taper by 3 mg/day until finished." (Plaintiffs' Exhibit 11.)

Hollins received her regular dosage of 85 mg on September 21, 2013, 82 mg on September 22, 79 mg on September 23, and so on until she left the Jail on October 5, 2013, when her dosage had been tapered to 46 mg. (Plaintiffs' Exhibit 12.)

Hollins experienced withdrawal symptoms while being tapered: she felt cold, experienced body aches and stomach cramps. (Hollins Dep. 59:19-20, Exhibit 13 at 44.) Hollins also experienced nausea. (Hollins Dep. 60:7-8, Exhibit 45:7.) Hollins re-enrolled in her methadone program when she left the Jail and returned to her previous daily dose of 85 mg. (Hollins Dep. 63:20-64:4, Exhibit 13 at 48-49.) Hollins is currently taking Suboxone. (Hollins Dep. 16:18, Exhibit 13 at 5.)

## IV. The Tapering Policy and *Parish v. Sheriff,* 07-cv-4369

*Parish v. Sheriff*, 07-cv-4369 is a class action involving medication issues at the Cook County Jail. The *Parish* class begins on July 12, 2008.[11] One of the claims in *Parish* involves the methadone tapering program plaintiffs challenge in this case.[12]

The district court in *Parish* recently ruled on cross-motions for summary judgment, *Parish v. Sheriff of Cook County*, 2019 WL 2297464 (N.D. Ill. 2019). It is conceivable that *Parish* will be resolved by settlement; the parties in *Parish* are required to report to the district court the status of their negotiations on December 10, 2019. (*Parish*, 07-cv-4369, Order of October 23, 2019, ECF No. 379.)

Any settlement in *Parish* will include an ending date for the class as well as an opportunity to opt out of the settlement. Plaintiffs Hill and Hollins have already opted out (Second Amended Complaint, ¶ 27, ECF No. 133 at 7), and rely on *American-Pipe* tolling to participate in this action. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1803-04 (2018). Plaintiffs' proposed class definition includes other individual who opt out or are excluded from *Parish* when the Court sets a date for closing the class.

---

[11] The original starting date of the *Parish* class is August 3, 2005. *Parish v. Sheriff of Cook County*, 2008 WL 4812875, at *6 (N.D.Ill. 2008). The district court set a later starting date in its order on cross-motions for summary judgment. *Parish v. Sheriff of Cook County*, 2019 WL 2297464, at *13 (N.D. Ill. 2019). Plaintiffs filed a motion to reconsider that ruling, (*Parish*, ECF No. 343); the district court denied that motion without prejudice "in light of the continuing settlement discussions" on September 12, 2019. (*Parish*, ECF No. 368.)

[12] The district court in *Parish* initially ruled that the methadone tapering policy was not at issue in that case. *Parish*, ECF No. 314 at 6 n.2 (March 31, 2016). The district court corrected this error in its subsequent order on cross-motions for summary judgment, *Parish*, 2019 WL 2297464, at *1, *18 (N.D. Ill. 2019).

## V. The Case Should Be Certified as a Rule 23(b)(3) Class Action

### A. Plaintiff's "Right to Have a Class Certified"

Rule 23 of the Federal Rules of Civil Procedure permits a litigant to "bring his [or her] claim as a class if he [or she] wishes." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). Upon showing that the case satisfies the requirements of Rule 23, "the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 403 (1980).

The Supreme Court in *Shady Grove* rejected a textual argument for treating the decision to certify a class as within the district court's discretion. *Shady Grove*, 559 U.S. at 399-400. The Court noted that Rule 23(b) starts with the instruction that "[a] class action *may* be maintained" if Rule 23(a) is satisfied. *Id.* But the Court rejected the contention that this language makes class certification a discretionary decision of the district court. Instead, the Court made plain that the permissive *may* refers to the plaintiff, rather than to the district court: "The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff." *Id.*

Plaintiffs have exercised their discretion to request that the case proceed as a class action on the tapering claim.[13] Plaintiffs shows below that this claim satisfies each requirement of Rule 23(a) as well as Rule 23(b)(3) and should therefore proceed as a class action.

---

[13] Plaintiffs do not seek class certification of their claim about an unreasonable delay in continuing methadone. (Second Amended Complaint, ¶¶ 29-35, ECF No. 133 at 7-8.)

### B. Ascertainability

Rule 23, as applied by the Seventh Circuit, requires "that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

Plaintiffs propose the following class definition:

> All persons who (a) entered the Cook County Jail on and after December 23, 2013 or (b) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369, and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, and who were not pregnant.

Class membership is limited to persons for whom the statute of limitations has not run. This includes persons entered the Jail on and after December 23, 2013, two years before plaintiff Rogers initiated this action. It also includes persons who opted out of *Parish v. Sheriff*, 07-cv-4369 because these persons are entitled to tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint). *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1803-04 (2018).

Class membership is further limited to persons who, when they entered the Jail, were lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2). This regulation sets standards for opioid treatment; section (h)(2) includes methadone, Levomethadyl acetate (LAAM); and Buprenorphine (Suboxen).

Persons who are pregnant (and who are not subjected to the tapering policy) are also excluded from the proposed class. The same is true for those on parole or held on a warrant from another jurisdiction, for whom defendants may have separate defenses.

The identity of members of the putative class is contained in the dosage records defendants maintain. Exhibits 3, 8, and 12 are the dosing history of the named plaintiffs. Defendants produced similar sheets for all persons who received methadone at the Jail between January 20, 2014 and March 31, 2019. The proposed class is readily ascertainable from defendants' records.

### C. Numerosity

Defendants have applied the tapering policy to at least the 1,090 persons identified in Plaintiffs' Exhibit 19. Counsel prepared this table from the dosage data defendants produced; the "Page No" column refers to the page number of the documents produced by defendants as "SAMM Report 1-20-2014 to 3-31-2019.pdf." The table anonymizes the data by identifying each detainee by first name only.

The proposed class in this case meets the numerosity requirement of Rule 23(a)(1) because at more than 1,000 people, it is "reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

Dr. Stamatia Richardson, the Medical Director of the Opioid Treatment Program at the Jail (Richardson Dep. 7:3-4, Plaintiffs' Exhibit 20 at 6), testified that the Jail

changed its tapering program in July of 2017.[14] (Richardson Dep. 39:21-24, Plaintiff's Exhibit 20 at 38). Before that date, the Jail applied its tapering policy to every detainee, other than those who were pregnant. (Richardson Dep. 50:17-20, Plaintiffs' Exhibit 15 at 49.)

Dr. Richardson testified that the policy she claimed had been adopted in June of 2017 has not been reduced to writing. (Richardson Dep. 40:1-4, Plaintiffs' Exhibit 20 at 39.) According to Dr. Richardson, while there is still a tapering program, the current practice is that every person entering the jail receives "an individual treatment plan." (Richardson Dep. 40:20-21, Plaintiffs' Exhibit 20 at 39.)

Dr. Richardson did not, at her deposition, have any data to support her opinion about the change in the tapering policy, stating that "I'm not keeping data at this point." (Richardson Dep. 45:18, Plaintiffs' Exhibit 20 at 44.) Nor did Dr. Richardson have any written guidelines for determining when a detainee would be permitted to maintain his (or her) methadone dosage. (Richardson Dep. 45:2-16, Plaintiffs' Exhibit 20 at 45.) Plaintiffs' Exhibit 19 shows 137 detainees were tapered after the purported change, from July 1, 2017 (number 955) through March 29, 2019 (number 1090).

### D. Commonality

To satisfy the commonality requirement of Rule 23(a)(2), the "prospective class must articulate at least one common question that will actually advance all of the class members' claims." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550 (7th Cir. 2016). In this case, one common question is whether defendants' explicit policy of tapering

---

[14] Plaintiffs file excerpts from this deposition to avoid filing under seal those part of the document that concern "protected health information."

methadone dosages results in a violation of the Fourteenth and Eighth Amendments.[15] The same is true for whether defendants' tapering policy violates the ADA and Rehabilitation Acts.[16]

"Thus all the class members' claims raise the same dispositive legal question, which satisfies the requirement of commonality." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 194 (N.D. Ill. 2018). There is no factual variation in this claim, *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008), and resolution of this common question "will actually advance all of the class members' claims." *Phillips, supra.* Because plaintiffs are challenging a general policy, commonality is satisfied. *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 437 (7th Cir. 2015).

Defendants may oppose commonality by seeking to argue the merits of plaintiffs' claims. The Court should reject any such argument. While the Court may examine the merits of a claim to determine if a case satisfies Rule 23, certification does not turn on whether the plaintiff class will ultimately prevail: "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010). "[C]ertification is largely independent of the merits." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1031 (7th Cir. 2018) (quoting *Schleicher*, 618 F.3d at 685). Thus, the question is not whether plaintiffs prevail on the merits of their theory of the case, but whether the case satisfies Rule 23. As in *Arreola*

---

[15] The Fourteenth Amendment sets the constitutional standard for pre-trial detainees, like plaintiffs Hill and Hollins, while the Eighth Amendment is the standard for persons, like Rodgers, who are serving a sentence. *Miranda v. County of Lake*, 900 F.3d 335, 350,51 (7th Cir. 2018).

[16] While the ADA excludes from its protection persons who are "currently engaging in the illegal use of drugs," 42 U.S.C. § 1221(a), persons enrolled in a methadone program are engaging in the legal use of drugs.

*v. Godinez,* 546 F.3d 788, 798 (7th Cir. 2008), there should not be any real dispute that this case satisfies commonality.

### E.  Typicality

Typicality in Rule 23(a)(3) "is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). As this Court observed in *Leung v. XPO Logistics, I*nc., 326 F.R.D. 185 ( N.D. Ill. 2018), typicality is satisfied when the claims of the named plaintiff arise "from the same legal theory" as those advanced for the class. *Id.* at 195.

Plaintiff's challenge to the tapering policy arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and [his] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The case therefore satisfies the typicality requirement of Rule 23(a)(3).

### F.  Adequacy

Plaintiffs are represented by competent counsel and they will "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4).

First, defendants have not asserted any unique defense against any of the named plaintiffs. *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011); *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 459 (N.D. Ill. 2013).

Second, plaintiff is represented by counsel skilled and experienced in these matters.

Plaintiffs' principal attorney (Kenneth N. Flaxman), was admitted to practice in 1972; his work in class action litigation includes *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980) (class action challenging federal parole guidelines); *Doe v. Calumet City,* 128 F.R.D. 93 ( N.D. Ill. 1989) (class action challenging strip search practice of Calumet City police department); *Calvin v. Sheriff of Will County*, 405 F.Supp.2d 933 ( N.D. Ill. 2005) (class action challenging strip search practice at Will County Jail). Plaintiffs' principal attorney has also argued more than 150 federal appeals, including five cases in the United States Supreme Court.[17]

Plaintiffs' second attorney (Joel A. Flaxman), is also competent to represent the class; he was admitted to practice in 2007, served three years in judicial clerkships,[18] followed by four years as a trial attorney in the United States Department of Justice, Civil Rights Division, before entering private practice.[19]

### G. Rule 23(b)(3)

This Court analyzed the predominance and superiority requirements of Rule 23(b)(3) in *Leung v. XPO Logistics, I*nc., 326 F.R.D. 185 (N.D. Ill. 2018). Predominance is established if "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Id.* at 195 (internal

---

[17] In addition to *Geraghty*, Flaxman argued *Browder v. Director, Department of Corrections*, 434 U.S. 257 (1978); *Jaffee v. Redmond*, 518 U.S. 1 (1996); *Ricci v. Arlington Heights*, cert dismissed as improvidently granted, 523 U.S. 613 (1998), and *Wallace v. Kato*, 549 U.S. 384 (2007).

[18] Counsel was a staff law clerk for the Seventh Circuit from 2007 to 2009 and then a law clerk for the Honorable Rebecca Pallmeyer from 2009 to 2010.

[19] With co-counsel, plaintiffs' second attorney has served as class counsel in several recent cases, including *Bell v. Dart*, No. 14 C 8059, 2016 WL 337144 (N.D. Ill. Jan. 26, 2016); *Beley v. City of Chicago*, No. 12 C 9714, 2015 WL 8153377, at *1 (N.D. Ill. Dec. 7, 2015); and *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015).

quotations omitted). Here, the legality of the tapering policy will be decided on the basis of expert testimony and will not turn on any individual variations.

A class action is superior to other methods for adjudicating the claims of the members of the proposed class. Resolution of the legality of the tapering policy will, as the district court observed in *Brown v. Cook County*, 2019 WL 3776150, at *15 ( N.D. Ill. 2019), "'achieve economies of time, effort, and expense,' and the claims are therefore well-suited for class treatment." *Id.* at *15, quoting *Amchem v. Windsor*, 521 U.S. 591, 615 (1997). And, of course, any need for an individual assessment of damages is not a ground for refusing to allowing a case to proceed as a class action, *Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 859 (7th Cir. 2017). *See e.g., McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015); *Butler v. Sears, Roebuck & Co*, 727 F.3d 796, 800 (7th Cir. 2013).

## VI. Conclusion

For the reasons above stated, the Court should order that this case be maintained as a class action under Rule 23(b)(3) for

> All persons who (a) entered the Cook County Jail on and after December 23, 2013 or (b) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369, and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, and who were not pregnant.

Respectfully submitted,<br>
/s/ <u>Kenneth N. Flaxman</u><br>
Kenneth N. Flaxman<br>
ARDC No. 08830399<br>
Joel A. Flaxman<br>
200 S Michigan Ave, Ste 201<br>
Chicago, IL 60604<br>
*Attorneys for Plaintiff*