UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH ROGERS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 1:15-CV-11632 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| SHERIFF OF COOK COUNTY and ) | |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

In November 2020, this Court certified a class of former Cook County Jail detainees who were subject to the Jail's mandatory methadone-taper-to-zero policy to treat opioid addiction. R. 178, Class Cert. Op.[1] Now that the parties have completed fact and expert discovery, Defendants Cook County and the Sheriff of Cook County move to decertify the class (for convenience's sake, the two Defendants will be referred to as the County). R. 217, Def.'s Mot. The County argues that expert discovery has revealed fatal defects in some of the required elements of Civil Rule 23. R. 218, Def.'s Mem. The motion for decertification is denied, but the proposed class definition must be modified as explained in this Opinion.

## I. Background

The certification opinion set forth the relevant facts as alleged in the Second Amended Complaint and known at the time of certification, and there is no need to

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

repeat them all in detail here. As pertinent to this decision, Keith Rogers filed this lawsuit, challenging the Defendants' implementation of a mandatory opioid treatment program that included a methadone-taper policy, tapering the methadone dosage until it was zero. R. 1, Compl. Rogers later amended the operative complaint twice to include more named Plaintiffs, to add more detailed factual allegations, and to add an explicit request for class certification. R. 133, Second Am. Compl. According to the Plaintiffs, the mandatory-taper policy violated the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth and Fourteenth Amendments to the Constitution. *Id.* ¶ 41; R. 153, Pls.' Cert. Mot. at 11–12.

Eventually, after briefing, this Court certified a class, under Rule 23(b)(3), containing two subclasses—one for pretrial detainees and one for post-sentencing prisoners—who:

> (1) entered the Cook County Jail between December 23, 2013 and October 7, 2019, inclusive and (2) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369; and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, who were not pregnant, and who received more than one dose of methadone while detained.

Class Cert. Op. at 18. Certification was granted for the Eighth and Fourteenth Amendment claims but denied for the ADA and Rehabilitation Act claims. *Id.* at 17–18. After the class was certified, the parties conducted more fact and expert discovery.

The County now moves to decertify the class, arguing that certain facts uncovered during discovery require decertification or, in the alternative, at least a

narrowing of the current class definition. Specifically, the County relies on expert discovery to contend that "many class members in fact *benefited* from the [Jail's] tapering policy." R. 218, Def.'s Mem. at 2 (emphasis in original). To the defense's way of thinking, the Plaintiffs' experts acknowledged during their depositions that some unknown number of class members may have benefited from the tapering policy, so the Plaintiffs can no longer meet the requirements of a class action under Rule 23. *Id.* The County thus moves to decertify the class or else amend the class definitions to "exclude members who benefitted [sic] from the tapering policy, and who were incarcerated after the OTP [opioid treatment program] stopped subjecting patients to mandatory tapering in July 2017." *Id.*

## II. Legal Standard

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). There is no difference between evaluating a class-certification motion and a subsequent motion asking to decertify an already-certified class, except that the Court may consider new evidence. So, "as developments in the class litigation occur, a court remains free to modify or vacate a certification order if it should prove necessary." *Binion v. Metro. Pier & Exposition Auth.*, 163 F.R.D. 517, 520 (N.D. Ill. 1995) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Nevertheless, like any other already-decided issue in a case, reconsideration of a class definition does require some kind of material change in fact or governing law.

3

On a class-decertification motion, the party seeking class certification "bears the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003). A plaintiff obtains (or maintains) class certification by satisfying each requirement of Rule 23(a): numerosity, commonality, typicality, and adequacy of representations—as well as one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). The plaintiff bears the burden of showing (based on a preponderance of the evidence) that each requirement is satisfied. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). "Failure to meet any of the Rule's requirements precludes class certification." *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)) (cleaned up).[2] But if a flaw in a proposed class definition can be fixed by refining the class definition rather than "flatly denying" certification, then changing the definition is the proper route. *Messner v. NorthShore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (collecting cases).

Finally, certification is and *remains* proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350–51 (2011) (cleaned up). The Court "must make whatever factual and legal inquiries are necessary to ensure that

---

[2] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). Hence, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Retired Chi. Police Ass'n*, 7 F.3d at 598–99 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1993)) (cleaned up); *see also Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("[A] court may take a peek at the merits before certifying a class," but that peek is "limited to those aspects of the merits that affect the decisions essential under Rule 23."). In the end, the Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (cleaned up).

### III. Analysis

### A. Decertification

In moving to decertify, the County contends that the class no longer satisfies the commonality, typicality, and predominance requirements of Rule 23. Def.'s Mem. at 2; *Messner*, 669 F.3d at 811 (describing requirements for class certification). Because the County's challenge to the certification of this class is limited to those three particular elements of Rule 23, the Court's analysis of whether certification continues to be proper is likewise limited.

5

1. Commonality

The County argues that the class members no longer have enough in common because the Plaintiffs' experts acknowledged, in deposition testimony, that some detainees would have been *worse* off without the mandatory tapering to zero. R. 218-1, Mangat Dep. at 94:23–96:8; R. 218-2, Fatoki Dep. at 129:3–130:1. That is because the Illinois Department of Corrections (which is referred to as the IDOC in criminal justice circles) provides no methadone treatment at all. So, the County argues, although it is arguably plausible that class members who were released from the Jail back into the community (where methadone was available) were harmed by the Jail's tapering policy, those class members who were transferred to an IDOC prison actually *benefitted* from the tapering policy. The County thus contends that certification is no longer tenable because those two categories of class members do not have a common claim. Def.'s Mem. at 10.

This argument falls short because the governing law does not require a showing of common harm when there is a common question (and answer) on liability. As the Plaintiffs correctly point out, the certification opinion explains that the governing law under Civil Rule 23 authorizes district courts to certify a class, in appropriate cases, in which the common question is on liability even though there will be variation in damages amongst class members. Class Cert. Op. at 17; R. 226, Pls.' Resp. at 2–3. Commonality requires common answers to "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and "even a single common question will do" if it produces a single answer, *Dukes*, 564 U.S. at 359 (cleaned up). It is true that all of the

class members' claims must "depend upon a common contention," but what that means is that the contention is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. As the Supreme Court explained in *Dukes*, what is most relevant to class certification "is not the raising of common questions—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis in original and cleaned up).

Here, the class members were all subjected to the Jail's mandatory tapering policy, so the class still does present at least one common *liability* answer for certification purposes, even if damages might vary amongst the class's members. Remember that the County does not suggest that its own conduct varied from detainee to detainee (or inmate to inmate, for those who were in custody due to an imposed sentence). Instead, the County is only arguing that injury varied across the class membership. But proportionate harm across a proposed class is not a requirement of Rule 23. *See In re IKO Roofing Shingle Products Liab. Litig.*, 757 F.3d 599, 601–03 (7th Cir. 2014) (discussing how variability in injury may be considered at the damages stage, rather than as a liability question). Mandatory tapering of methadone treatment down to zero is either a violation of the Due Process Clause (for pretrial detainees) or the Eighth Amendment (for sentenced inmates) for the entire class—or it is

not a violation, which again is an answer that would apply to every class member. The answer to that liability question does not depend on whether the IDOC separately and later caused harm to class members by requiring an immediate cessation of methadone.

It is true that a class definition can be overbroad if "it sweeps within it persons who *could not have been* injured by the defendant's conduct." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (emphasis added). But it is "almost inevitable" that a class will "include persons who *have not* been injured by the defendant's conduct," and "[s]uch a possibility or indeed inevitability does not preclude class certification." *Id.* (emphasis added); *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified."); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("If the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong."); *Messner*, 669 F.3d at 824 (distinguishing "for class certification purposes" between a proposed class that includes "members who are ultimately shown to have suffered no harm" and one that includes "members who for some reason could not have been harmed"). The governing law, then, does not require that class membership be sliced and diced on injury when the common question—and common answer—is on liability arising from the same across-the-board conduct. Here, the Jail's mandated, across-the-board tapering policy applied to all those who were lawfully on methadone. And at the time that the tapering policy applied to the class members, it was not known which detainee would

8

or would not be transferred to an IDOC prison. At the time of the application of the policy, all of the class members could have been harmed. The commonality requirement remains satisfied.

### 2. Typicality

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit instructs that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (cleaned up). And, although the "typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," Rule 23(a)(3) "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id*.

Here, the typicality requirement is met. The named Plaintiffs' Eighth and Fourteenth Amendment claims are typical of those of the defined class, because the named Plaintiffs were subjected to the same mandatory taper-to-zero policy as the rest of the class members. The County stresses that the class is "fatally overbroad" because some 13% of its members—an estimate of those eventually transferred into IDOC custody—were ultimately not harmed (in the County's view) by the tapering policy. Def.'s Mem. at 11. But that is not a persuasive challenge to typicality, which

9

is about the relationship between the claims of the named plaintiffs and the claims of the at-large class. By the County's own count, most of the class members were not remanded to the IDOC, including the named Plaintiffs. *Id.* Because the class representatives' claims "have the same essential characteristics as the claims of the class at large," *Retired Chi. Police Ass'n*, 7 F.3d at 597 (cleaned up), their claims are sufficiently typical.

### 3. Predominance

The County also contends that the common questions of the class no longer predominate over the individual questions. Def.'s Mem. at 12. Again, the County points to the potential difference between class members who were released from the Jail back to the community (where methadone treatment was available) and those who were transferred to IDOC (where there was no methadone treatment). *Id.* The County adds too that some number of class members chose tapering themselves instead of maintenance doses. *Id.*

Under Civil Rule 26(b)(3), the Plaintiffs must continue to show that "questions of law or fact common to the class *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). In assessing predominance, this Court considers "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

10

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

Although similar in nature to the commonality element, "the predominance criterion is far more demanding." *Messner*, 669 F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)) (cleaned up). The Court must compare the role of common issues of law and fact against the role of individual issues, including whether litigating the case as a class would still require the Court to examine individual transactions or events one-by-one. *See Messner*, 669 F.3d at 815; *see also Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011) (affirming district court ruling that predominance was not satisfied "because the details of each customer's individual transactions would need to be examined to consider whether the claims for unjust enrichment or statutory deception were proven").

Here, the predominance requirement is met because the common legal question described above—whether the Jail's linear taper-to-zero policy violated the Eighth and Fourteenth Amendment rights of affected detainees—"represent a significant aspect of [this] case and can be resolved for all members of [the] class in a single adjudication." *Messner*, 669 F.3d at 815 (cleaned up); *see also Parish v. Sheriff of Cook Cnty.*, No. 07 C 4369, 2016 WL 1270400, at *9 (N.D. Ill. Mar. 31, 2016) ("[W]hether [the Cook County Jail's] policy exists and is constitutional will be the primary focus of this litigation."); *Otero v. Dart*, 306 F.R.D. 197, 207 (N.D. Ill. 2014) ("Plaintiff challenges what he alleges is a policy and practice that applies to all Cook County Jail detainees …. The predominant issue in this litigation will be the existence and

constitutionality of that alleged practice."). The answer to the common liability question is the key to this case. As explained in the prior certification opinion, Class Cert. Op. at 16, there is no reason to believe that the tapering caused such different reactions amongst detainees and inmates that individual damages issues (if the class were to prevail) would override the importance of getting a one fell-swoop answer to the liability question. The same predominance applies even to those class members who were later remanded into IDOC custody; how they were individually affected does not undermine the primacy of the liability question and answer.

Also, the two certified classes already tamp down the importance of individual variances among the class membership. The class is divided into two subclasses—for pretrial detainees and post-sentence prisoners—who were not pregnant, not on parole, not held on a warrant from another jurisdiction, and received more than one dose of methadone while detained. Class Cert. Op. at 18; *cf. Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("The narrow way in which the district court defined the classes here eliminates concern that the definitions are overbroad or include a great many people who have suffered no injury."). Weighing both the nature of the claim and the class definitions, the Court determines that the common questions predominate over the individual ones. *See Messner*, 669 F.3d at 815 ("Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.").

On the defense assertion that some number of class members voluntarily chose the taper-to-zero regimen over maintenance doses, Def.'s Mem. at 12, the defense is unable to pin a concrete, record-evidence-based estimate of how many class members did that. Without additional data (discovery is closed, R. 208, 209, 210, 211), it is not at all clear what proportion of the class consented to tapering, so in turn it is not known that those who consented constitutes a large enough segment to flip the predominance finding around. Indeed, it seems unlikely from a common-sense point of view that a meaningfully large number of detainees or prisoners would have consented to just flat out stop treatment when they had been lawfully—and, presumably, voluntarily—undergoing treatment before being taken into custody. In sum, then, certification remains proper.

### B. Class Definition

In lieu of decertification, the County alternatively argues that "the class definitions should be amended to exclude members who benefitted from the tapering policy, and who were incarcerated after the [Jail] stopped subjecting patients to mandatory tapering in July 2017." Def.'s Mem. at 2. The first half of that argument (some members supposedly benefitted from tapering) has already been rejected as a basis for decertifying the class. But the second half of that argument—the mandatory, across-the-board tapering policy stopped in July 2017—does justify a change in the class definitions.

Factual changes uncovered in discovery (or changes that just happen with the passage of time) can warrant a change to the scope of earlier-certified classes. *See In*

*re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) (discussing a district court's authority to modify a class definition). Indeed, the Plaintiffs agree with the County that the policy was not applied to all class members after July 1, 2017. Pls.' Resp. at 12. But instead of just conceding that the class period should end with July 2017, the Plaintiffs propose amending the class definition to exclude those detainees or prisoners whose methadone doses were not tapered. *Id.* at 12–13. But for detainees and prisoners who entered the Jail after the mandatory policy ended (that is, after July 2017), class litigation would not present a predominantly common question. Instead, the key questions would be highly individualized, with the Court examining why it is that a particular detainee or prisoner did not taper against the background fact that the policy was no longer mandatory. *Cf. Money v. Pritzker*, 453 F. Supp. 3d 1103, 1128 (N.D. Ill. 2020) ("The imperative of individualized determinations, recognized by both sides in this case, makes this case inappropriate for class treatment.").

The core basis for class certification here is that class members were subjected to the same across-the-board mandatory tapering. After July 2017, Jail patients were no longer subject to mandatory tapering, so the ultimate decision to taper was made on a case-by-case basis by the health care providers. R. 218-5, Richardson Rep. at 3. That stopped from July 1, 2017, onward. So the class definitions are modified as follows:

> **Class 1 (Pretrial Detainees)** comprises all pretrial detainees who (1) entered the Cook County Jail between December 23, 2013 and July 1, 2017, inclusive and (2) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369; and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on

14

parole or held on a warrant from another jurisdiction, who were not pregnant, and who received more than one does of methadone while detained;

**Class 2 (Post-sentence Prisoners)** comprises all post-sentencing prisoners who (1) entered the Cook County Jail between December 23, 2013 and July 1, 2017, inclusive and (2) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369; and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, who were not pregnant, and who received more than one dose of methadone while detained.

### IV. Conclusion

The motion to decertify is denied. The parties shall confer, shall initiate settlement discussions, and shall file a status report on the next steps of the litigation by April 19, 2024.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2024

15