UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH ROGERS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) No. 1:15-CV-11632 |
| | ) |
| v. | ) |
| | ) Judge Edmond E. Chang |
| SHERIFF OF COOK COUNTY, and | ) |
| COOK COUNTY, ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

While detained at the Cook County Jail, Keith Rogers, James Hill, and Wanda Hollins were subjected to the Jail's policy of tapering detainees' methadone dosages—which are used to treat opioid addiction—down to zero. R. 133, Second Am. Compl. at 6–7. Rogers, Hill, and Hollins allege that the application of this policy caused them painful withdrawal symptoms and increased the chance of opioid-addiction relapse. *Id.* at 8–9; R. 178, Class Cert. Op. at 3. So they brought this class-action lawsuit, claiming that the County's mandatory taper policy violated the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth and Fourteenth Amendments. Second Am. Compl.

After this Court certified a class for the two constitutional claims, the County moved for decertification. R. 243, Class Decert. Op. at 1–3. Though the Court denied decertification, it changed the end date of the class period from October 7, 2019, to July 1, 2017, based on new evidence that showed that the Jail's taper policy stopped being mandatory after July 1, 2017. *Id.* at 13–15. The Plaintiffs now move for

reconsideration of that end-date adjustment, arguing that detainee treatment records show that the policy remained mandatory until 2019. R. 247, Recons. Mot. Because the Plaintiffs' cited evidence does not support their argument and because the motion for reconsideration is procedurally improper, the motion is denied.

## I. Background

Before being detained in the Cook County Jail, Keith Rogers, James Hill, and Wanda Hollins were on methadone-maintenance programs to treat their opioid addictions. Second Am. Compl. at 5–7; Class Cert. Op. at 2–3. But after they started their detention in the Jail, they were required to gradually reduce their methadone dosages down to zero because of the Jail's mandatory methadone-taper policy. Second Am. Compl. at 5–7; Class Cert. Op. at 2–3. Rogers, Hill, and Hollins allege that this tapering caused them painful withdrawal symptoms, including nausea, vomiting, body aches, and diarrhea. Second Am. Compl. at 6–7. They also claim that tapering methadone dosages (as opposed to providing ongoing, stable maintenance dosages) increases the risks of future relapse and fatal overdose. Class Cert. Op. at 3.

So Rogers brought this lawsuit, contending that the County's application of its methadone-taper policy violated the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth and Fourteenth Amendments. R. 1, Compl. Rogers later amended his Complaint to add Hill and Hollins as additional plaintiffs. Second Am. Compl. Eventually, this Court certified a class under Rule 23(b)(3) comprised of two subclasses—one for pretrial detainees and one for post-sentencing prisoners—who:

(1) entered the Cook County Jail between December 23, 2013 and October 7,

2019, inclusive and (2) opted out of, or are otherwise excluded from, participation in *Parish v. Sheriff*, 07-cv-4369; and were, at the time of entry into the Jail, lawfully taking an opioid antagonist, as defined in 42 C.F.R. 8.12(h)(2), who were not then on parole or held on a warrant from another jurisdiction, who were not pregnant, and who received more than one dose of methadone while detained.

Class Cert. Op. at 18. Certification was granted for the Eighth and Fourteenth Amendment claims but denied for the Americans with Disabilities Act and Rehabilitation Act claims. *Id.* at 17–18.

After the class was certified, the parties conducted more discovery. Based on facts uncovered during that additional discovery, the County then moved to decertify the class. Class Decert. Op. at 2–3. The Court denied the decertification motion but did adjust the class definition—specifically, the end of the class period—based on the new evidence. *Id.* at 13–15. In particular, expert testimony established that the County's taper policy was not mandatory after July 1, 2017; instead, after that date, the decision to taper a detainee's methadone dosages was made on a case-by-case basis by health care providers. *Id.* at 14; R. 218-5, Richardson Rep. at 3. This policy change meant that for class members who were detained after July 1, 2017, individual questions about the decision to taper (or not to taper) would outweigh the common liability questions shared by all class members, and thus the common questions would no longer predominate over individual ones. Class Decert. Op. at 14–15. Thus, the Court changed the end date for the class period from October 7, 2019, to July 1, 2017. *Id.* The Plaintiffs now move for reconsideration, arguing that the Court should revert the end date to October 7, 2019, because the County's methadone-taper policy

3

remained mandatory until then. Recons. Mot.

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up). But a motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see also Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (motion to alter or amend a judgment under Rule 59(e), which also requires a showing of manifest error of law or fact or new evidence, "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented

4

to the district court prior to the judgment." (cleaned up)).

## III. Analysis

### A. Procedural Grounds

As a threshold matter, the County argues that the Plaintiffs' motion to reconsider is not procedurally proper because it is not based on newly discovered evidence or a change in the law. R. 253, Recons. Mot. Resp. Br. at 2. That is correct and is fatal to the motion.

A motion to reconsider is appropriate if new evidence has been discovered in the time since the Court rendered its decision. *Rothwell Cotton*, 827 F.2d at 251. These motions cannot be used to present evidence that could have previously been brought or to rehash arguments that could have previously been made. *Otto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Here, the Plaintiffs contend that the Court should change the class end date because the County's records show that out of the 36 detainees who entered the Jail in July 2017 and had been taking methadone, 34 of them underwent methadone tapering after being detained. Recons. Mot. at 1–2. But those records were available to the Plaintiffs well before March 2023, when briefing was due on the County's motion for class decertification. R. 222, Jan. 30, 2023, Minute Entry. In fact, the individual patient records were produced to the Plaintiffs back in April 2019. *See* R. 226, Decert. Mot. Resp. Br. at 9, n. 4. So the Plaintiffs had numerous prior opportunities to present the records to the Court and to make the argument that the mandatory taper policy continued after 2017.

The reconsideration motion also attacks the credibility of Dr. Richardson, the

5

County expert who testified that the mandatory taper policy ended in July 2017. The Plaintiffs assert that Dr. Richardson's testimony is not credible because it fails to account for the data showing that 34 of 36 July 2017 detainees underwent methadone tapering. Recons. Mot. at 5–6. But like the patient records, Dr. Richardson's report and testimony are not newly discovered evidence. Instead, that evidence was attached as an exhibit to the County's motion to decertify, R. 218-5, Richardson Rep., yet the Plaintiffs failed at that earlier time to make the argument that they now present. So the Plaintiffs' motion to reconsider relies exclusively on preexisting evidence, rendering the motion procedurally improper.

Next, the Plaintiffs contend that the County did not make an argument about predominance in their briefing on the decertification motion, leaving the Plaintiffs without a chance to be heard on that issue before the Court decided to change the class period end date. Recons. Mot. at 7. The Plaintiffs claim that this violated the rule of "party presentation." *Id.* That is far from true and grossly misunderstands party presentation.

In the County's opening brief to its decertification motion, it argued that predominance was not satisfied for the Plaintiffs' class because individual questions of whether tapering was beneficial for particular detainees predominated over common questions of liability. R. 218, Decert. Mot. Br. at 12. Then, in its decertification reply brief, the County correctly noted that the Plaintiffs had failed to substantively address the County's predominance arguments. R. 233, Decert. Mot. Reply Br. at 9. It was based on these arguments that the Court then concluded that predominance was

6

not satisfied for class members after July 1, 2017, because individual questions of whether and why particular detainees chose to taper their methadone dosages would predominate common liability questions. Class Decert. Op. at 14.

Thus, the Plaintiffs were confronted with an explicit predominance argument and had the opportunity to respond—but did not. The fact that the Plaintiffs did not respond to the predominance argument is their own failing, not the failing of the County or the Court. Plus, predominance is always a required element for certifying a class under Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3). The rule of party presentation has not been violated; rather, at multiple previous stages of litigation, the Plaintiffs failed to make use of their opportunities to make the arguments that they improperly seek to present at this stage.[1]

### B. Substantive Challenges

The Plaintiffs' sole substantive challenge to the adjustment of the class period end date is that individual detainee records show that 34 of the 36 detainees who

---

[1] The Plaintiffs cite the Supreme Court's decision in *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020), in support of the contention that the Court violated the party-presentation rule. But that case presented far different circumstances than those at play here. There, the Supreme Court concluded that the party-presentation rule had been violated because the Ninth Circuit rendered its decision based on a First Amendment overbreadth theory that neither party had raised in the District Court or even in appellate briefing. *Sineneng-Smith*, 590 U.S. at 377–80. Instead, the Ninth Circuit raised this constitutional issue on its own and then ordered supplemental briefing on it from three outside organizations, not from the parties themselves. *Id.* at 379–80. The Supreme Court explained that the Ninth Circuit's decision thus went far beyond "the precise arguments of counsel" and was a "radical transformation of th[e] case." *Id.* at 380. Here, on other hand, far from radically transforming the case, the Court adjusted the end date of the class period in part based on a lack of predominance, an issue that the County repeatedly presented in briefing and that the Plaintiffs had several opportunities to address. The Plaintiffs' failure to make use of those opportunities does not translate to the Court's failure to abide by the party-presentation rule.

7

entered the Jail in July 2017 and who had been taking methadone before detention were then "subjected to linear tapering." Recons. Mot. at 1. According to the Plaintiffs, this shows that the County's mandatory taper policy continued after July 1, 2017, and calls into question the credibility of Dr. Richardson's expert testimony that mandatory tapering ended on that date. Recons. Mot. at 1–5. But the data that the Plaintiffs cite does not support their argument. Dr. Richardson testified that after July 1, 2017, jail patients were no longer subject to mandatory methadone tapering and instead the decision to taper was made on a case-by-case basis by health care providers. Richardson Rep. at 3. That testimony is entirely consistent with the patient records. As the County correctly notes, the fact that 34 of 36 patients tapered their methadone dosages does not prove or even suggest that tapering remained mandatory. Rather, it suggests that health care providers decided on a case-by-case basis that tapering was the best course of treatment for those 34 patients. That aligns with Dr. Richardson's statements and does not call his credibility into question.

Aside from this patient-record data, the Plaintiffs offer no other evidence or arguments to dispute the fact that methadone tapering stopped being mandatory after July 1, 2017. *See* Recons. Mot. No cross-examination of Dr. Richardson undermines his testimony, no Plaintiffs' expert testimony refutes the testimony, and no individualized assessment of the patients rebuts the testimony. In fact, the Plaintiffs previously *admitted* to this fact—but now try to change course. In their response brief to the County's decertification motion, the Plaintiffs stated that they "agree with defendants that the [methadone tapering] policy was not applied to all class members

8

after July 1, 2017." Decert. Mot. Resp. Br. at 12. So the Plaintiffs recognized that the tapering policy was not mandatory after July 1, 2017. They cannot now contradict that previous admission and request an adjustment to the class period end date on the basis that the policy remained mandatory until October 2019. The Plaintiffs' argument fails, and there are no grounds to revisit or change the end date. The motion for reconsideration is denied.

### IV. Conclusion

The Plaintiffs' motion, R. 247, to reconsider the order resetting the class closing date is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 21, 2025